## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DARRELL DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-11-S-3738-NE** |
| | ) | |
| **DAY & ZIMMERMANN NPS, INC.** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

This case is before the court on defendant's motion to dismiss plaintiff's amended complaint,[1] and plaintiff's motion for leave to file a second amended complaint.[2] Upon consideration of the motions, the pleadings, and the parties' briefs, the court concludes that the motion for leave to amend should be denied, and the motion to dismiss should be granted.

### I.  STANDARDS OF REVIEW

**A**.    **Motion to Dismiss**

Defendant's motion to dismiss is based upon Federal Rule of Civil Procedure 12(b) — the pertinent part of which provides that "a party may assert the following defenses by motion:  . . . (7) failure to join a party under Rule 19."  Fed. R. Civ. P.

---

[1] Doc. no. 18.

[2] Doc. no. 19.

12(b)(7).  Rule 19(a) provides that:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A)  in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B)  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i)  as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > (ii)  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  "If a person has not been joined as required, the court must order that the person be made a party."  Fed. R. Civ. P. 19(a)(2).  Rule 19(b) further provides that:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:
>
> > (1)  the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> >
> > (2)  the extent to which any prejudice could be lessened or avoided by:

    (A)    protective provisions in the judgment;

    (B)    shaping the relief; or

    (C)    other measures;

  (3)    whether a judgment rendered in the person's absence would be adequate; and

  (4)    whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

When evaluating the import of the foregoing provisions of Rule 19 in *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263 (11th Cir. 2003), the Eleventh Circuit observed that

> Rule 19 states a two-part test for determining whether a party is indispensable.  First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible.  If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue.

*Id*. at 1279-80 (quoting *Challenge Homes, Inc. v. Greater Naples Care Center, Inc*., 669 F.2d 667, 669 (11th Cir.1982)). "In making the first determination—i.e., whether the party in question 'should be joined,' pragmatic concerns, especially the effect on the parties and the litigation, control." *Focus on the Family,* 344 F.3d at 1280 (citations and some internal quotation marks omitted).

-3-

**B**.    **Motion for Leave to Amend**

Federal Rule of Civil Procedure 15, addressing amended and supplemental pleadings, states that a court should "freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).

> A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) *where amendment would be futile. See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed.2d 222 (1962).

*Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001) (emphasis supplied).

## II.  ALLEGATIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

The pertinent factual allegations contained in plaintiff's First Amended Complaint read as follows:

> 8.    Plaintiff was hired by the defendant Day on or abut [sic] October 11, 2010 to work in the Brown's Ferry Nuclear Power Plant, owned by TVA.

> 9.    He went for his physical on October 11, 2010 at the Browns Ferry facility.

> 10.    He was terminated on October 14, 2010 by defendant Day & Zimmermann.

> 11.    He was terminated because he failed to meet the chest requirements of the company (S) [sic].  His pulse rate was too fast. According to defendant, plaintiff had a heat stress reaction which would not allow him to work in temperatures above 80 degrees.

-4-

12.    The regulations promulgated by the Commission[3] require that job applicants pass a medical examination prior to becoming licensed "operators" at any nuclear facility. The facility is required to certify that a physician is required to determine if an applicant's medical condition and general health will adversely affect the performance of an assigned operator (plaintiff Davis) endangering public health and safety. These requirements mandate that facilities certify the health of their operators, and if a facility cannot certify the health of an operator for a particular position, the operator cannot legally be licensed to work there.

13.    Plaintiff explained to the nurse that he had always had a high pulse rate and that he had worked nuclear plants for five years with his high pulse rate. He said he could get his doctor to verify this and give him a medical right to work slip stating that he physically could withstand the heat stress of the job.

14.    Plaintiff explained to his supervisor at Day and Zimmermann that he had always had a high pulse rate and that he had worked nuclear plants for five years with his high pulse rate. He said he could get his doctor to verify this and give him a medical right to work slip stating that he physically could withstand the heat stress of the job.

15.    He was told that it would not do him any good and that under Day and Zimmermann policy, his doctor's statement that he could perform the work would not help him keep his job.

16.    After this plaintiff went to the South Central Heart Group and received a doctor's note stating that he had no cardiac work restrictions, stress echo is normal, exercise capacity is good, no cardiac limitation seen.

17.    According to the regulations promulgated by Congress, a physician is required to determine if Davis was healthy enough to work in the plant. Davis had his vitals taken by a nurse at the facility. But, the nurse did not make the decision to not let him work. That decision was made by Day and Zimmermann. Day and Zimmermann refused to

---

[3] The court presumes plaintiff is referring to the Nuclear Regulatory Commission.

let Davis bring to them his own doctor's clearance, which he immediately got.[4]

Based on these factual allegations, plaintiff asserted a single claim under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("the ADA"), captioned "Regarded as Having a Disability."[5]   Plaintiff alleges that defendant terminated his employment because defendant regarded him as having the disability of a "high pulse rate."[6]   Specifically,

> 22.   Plaintiff alleges that the defendant used the results of the test given to plaintiff by the TVA medical personnel to terminate plaintiff.

> 23.   Plaintiff alleges that defendant Day & Zimmermaw [sic] used this test as a selection criteria.

> 24.   Plaintiff alleges that the company used the test to screen him out the job [sic].

> 25.   Plaintiff alleges that the defendant cannot show that the standard, [sic] test, as used by the defendant, is job related and is consistent with a business necessity.[7]

As relief for these violations, plaintiff requests an injunction, lost wages and benefits, compensatory damages (*i.e.*, emotional distress damages), costs, and attorney's fees.[8]

---

[4] Doc. no. 12 (Amended Complaint), at ¶¶ 8-17.

[5] *See id.* at 4.

[6] *Id.* at ¶¶ 18-21.

[7] *Id.* at ¶¶ 22-25.

[8] *Id.* at 5 (*ad damnum* clause).

In plaintiff's proposed Second Amended Complaint, he adds the following additional factual allegations:

18.   According to defendant's documentation, listed by defendant as exhibit C,[9] this documentation called "Certificate of Medical Examination by Facility Licencee [sic]" must be filled out by a physician before plaintiff would be allowed to work.

19.   The above certificate is a document promulgated by the NRC as a requirement to allow workers into the facility.

20.   The above document was not filled out.

21.   Plaintiff requested that he be allowed to see his physician to get clearance.

22.   Defendant Day refused to accommodate him and made no effort to get this form 396[10] for Davis's doctor to fill out.

23.   They simply told him it would do him no good and fired him.

24.   Plaintiff alleges they breached their duty to him under the ADA to try to accommodate his disability.

25.   Plaintiff further alleges that he was not permanently banned from the facility by the nurses [sic] report.

26.   Defendant's exhibit C, [sic] states that future employment was possible.

---

[9] The court presumes that the "Exhibit C" referenced by plaintiff actually is Exhibit 3 to defendant's motion to dismiss plaintiff's Amended Complaint, which is a copy of the Nuclear Regulatory Commission's Form 396, or a "Certification of Medical Examination by Facility Licensee." *See* doc. no. 18, at Exhibit 3.

[10] *See supra* note 9, for an identification of the Form 396.

27.    The medical evaluation signed by the nurse medical examiner, [sic] allows for a medical clearance with restrictions.

28.    This was presented to Day & Zimmermann and they made effort [sic] to determine if plaintiff could enter the facility with restrictions.

29.    Day & Zimmermann has a duty under the ADA to investigate this and they failed to do that.[11]

Plaintiff also added proposed claims for "having a disability" and failure to accommodate.  According to plaintiff, defendant discriminated against him because of his disability, as well as because defendant regarded him as having a disability.[12] Plaintiff also alleges that defendant denied a request to accommodate his disability when it refused to allow his own doctor to run a heat stress test or other examination to determine if plaintiff could work at the TVA facility.[13]

## III.  DISCUSSION

Defendant moved to dismiss plaintiff's First Amended Complaint due to plaintiff's failure to join indispensable parties.  Defendant also requested the court to deny plaintiff's motion for leave to file a Second Amended Complaint, asserting that amendment would be futile because the proposed Second Amended Complaint also

---

[11] Doc. no. 19 (Motion to file Second Amended Complaint), Exhibit 1 (Proposed Second Amended Complaint), at ¶¶ 18-29.

[12] *Id.* at ¶¶ 30-37.

[13] *Id.* at ¶¶ 38-43.

fails to join indispensable parties.

A.      **Failure to Join Indispensable Parties**

Defendant asserts that plaintiff's First Amended Complaint should be dismissed because the Tennessee Valley Authority ("TVA") and the United States Nuclear Regulatory Commission ("NRC") are indispensable parties, yet they cannot be joined as defendants to plaintiff's claims.  Plaintiff offered no response to this argument in his brief in opposition to defendant's motion to dismiss.  Instead, plaintiff's entire brief is devoted to arguing whether the allegations of his First Amended Complaint are sufficient to state a claim for disability discrimination under the ADA.[14]  Furthermore, plaintiff's proposed Second Amended Complaint does not attempt to assert any claims against either the TVA or the NRC, and it does not add any other allegations to address the arguments asserted in defendant's motion to dismiss.  Instead, the proposed Second Amended Complaint only asserts additional facts to support plaintiff's disability discrimination claim, and additional theories for pursuing that claim under the ADA.[15]

1.      **Background information**

Defendant's brief correctly and succinctly summarizes much of the background

---

[14] *See* doc. no. 20 (Response to Second Motion to Dismiss).

[15] *See* doc. no. 19 (Motion to File Second Amended Complaint), at Exhibit 1 (Proposed Second Amended Complaint).  It is as though plaintiff's counsel did not even read the arguments asserted in defendant's motion to dismiss.

information necessary for a proper understanding of its motion to dismiss:

> [Day & Zimmermann] provides staffing to nuclear and fossil fuel suppliers. One of its clients is the Tennessee Valley Authority ("TVA").
>
> . . . .
>
> TVA operates three nuclear power plants, including the Browns Ferry Plant, which is located on 840 acres beside Wheeler Reservoir on the Tennessee River, near Athens, Alabama. As is typical in the nuclear plant industry, TVA's need for workers at its Browns Ferry Plant fluctuates constantly. TVA therefore relies on [Day & Zimmermann] to satisfy its ever-changing staffing needs related to the maintenance and modification of the Browns Ferry Plant. To accommodate TVA's staffing needs, [Day & Zimmermann] relies on temporary workers, which [Day & Zimmermann] hires to complete designated maintenance and modification tasks at the facility. As these designated tasks are completed, there is no need for [Day & Zimmermann] personnel, save for a minimal skeletal crew, until TVA identifies additional tasks that need to be completed. Accordingly, [Day & Zimmermann] routinely hires and lays off workers at the Browns Ferry Plant, and subsequently rehires laid off workers as additional work becomes available.
>
> The individuals that [Day & Zimmermann] hires to work at the Browns Ferry Plant are members of various professional trade unions. When [Day & Zimmermann] needs workers for a specific job assignment, it contacts the trade unions. The trade unions' respective hiring halls then refer employees to jobs with [Day & Zimmermann]. The Project Maintenance and Modification Agreement ("PMMA") . . . governs the terms of the workers' employment at the Browns Ferry Plant. The PMMA, which is an agreement between [Day & Zimmermann] as a contractor of the power plants and multiple trade unions, addresses the unique nature of the services provided by [Day & Zimmermann].
>
> . . . .

The operation of Browns Ferry and all other nuclear power plants in the United States is governed by the United States Nuclear Regulatory Commission ("the Commission or NRC"). The regulations promulgated by the Commission require that job applicants pass a medical examination prior to becoming licensed "operators"[16] at any nuclear facility. 10 C.F.R. Part 55. Applications may be approved only if, among other things, the applicant's medical condition and general health will not cause operational errors that endanger public health and safety. 10 C.F.R. Part 55, § 55.7.[17]

In order to comply with these nuclear regulations, each nuclear facility (here, TVA) is required to certify that a physician has examined an applicant in accordance with the Commission's regulatory guidelines. 10 C.F.R. Part 55, § 55.23.[18]   A Form NRC-396, "Certification of Medical Examination by Facility Licensee," (here, TVA) must be completed by a Senior Management Representative of TVA, who is on site, and must certify that a physician has conducted the medical

---

[16] An "operator" is "any individual licensed under this part to manipulate a control of a facility." 10 C.F.R. § 55.4. "A person must be authorized by a license issued by the Commission to perform the function of an operator or a senior operator . . . ." 10 C.F.R. § 55.3.

[17] 10 C.F.R. § 55.7 provides: "The Commission may, by rule, regulation, or order, impose upon any licensee such requirements, in addition to those established in the regulations in this part, as it deems appropriate or necessary to protect health and to minimize danger to life or property."

[18] 10 C.F.R. § 55.23 provides:

To certify the medical fitness of the applicant, an authorized representative of the facility licensee shall complete and sign NRC Form 396, "Certification of Medical Examination by Facility Licensee," which can be obtained by writing the Office of Information Services, U.S. Nuclear Regulatory Commission, Washington, DC 20555–0001, by calling (301) 415–7232, or by visiting the NRC's Web site at http://www.nrc.gov and selecting forms from the index found on the home page.

(a) Form NRC-396 must certify that a physician has conducted the medical examination of the applicant as required in § 55.21.

(b) When the certification requests a conditional license based on medical evidence, the medical evidence must be submitted on NRC Form 396 to the Commission and the Commission then makes a determination in accordance with § 55.33.

examination of the applicant as required by 10 C.F.R. 55.21. . . .[19]  This form certifies that the applicant has been examined by a physician and that the applicant has been found to meet the safeguards and fitness for duty requirements for licensed operators at this facility.  As indicated on page 2 of [Form NRC-396], the medical examination contemplated by the certification of medical examination by facility licensee can be performed by a physician or other medical professional such as a physician's assistant or nurse practitioner.  The examining physician may delegate portions of the examination to a licensed nurse practitioner or a licensed physician's assistant who is familiar with the applicable ANSI standard and the activities required of a nuclear power plant operator or senior operator.  As indicated above, this form is completed by TVA and is to be submitted by TVA to the NRC.  [Day & Zimmermann] does not have the Form NRC-396 for [plaintiff] because [Day & Zimmermann], as contractor, would not be responsible for completing the Form NRC-396, nor is [Day & Zimmermann] an intended recipient of the Form.  The intended recipient is the NRC.  Instead, what [Day & Zimmermann] received from TVA was a summary of the medical evaluation of [plaintiff]. . . .  So any dispute which [plaintiff] has with the correctness of the medical evaluation is a dispute he has with TVA and not [Day & Zimmermann].[20]

## 2.    Are TVA and the NRC "indispensable parties"?

---

[19] 10 C.F.R. § 55.21 provides that "[a]n applicant for a license shall have a medical examination by a physician.  A licensee shall have a medical examination by a physician every two years. The physician shall determine that the applicant or licensee meets the requirements of § 55.33(a)(1)."  10 C.F.R. § 55.33(a)(1) states that

The Commission will approve an initial application for a license pursuant to the regulations in this part, if it finds that —

(1) Health.  The applicant's medical condition and general health will not adversely affect the performance of assigned operator job duties or cause operational errors endangering public health and safety.  The Commission will base its finding upon the certification by the facility licensee as detailed in § 55.23.

[20] Doc. no. 18, at 1-5 (bracketed alterations supplied).

The court concludes that both TVA and the NRC are "indispensable parties" under Federal Rule of Civil Procedure 19(a)(1).  If either of those parties were to remain absent from the litigation, the court would be unable to accord complete relief between plaintiff and Day & Zimmermann, the existing parties.  Even if the court decided to order Day & Zimmermann to re-employ plaintiff, TVA still would not be required to accept the results of plaintiff's medical tests unless it also was a party to the case, and plaintiff still might not be able to work at the Brown's Ferry Plant.[21]  *Cf.* *Mitchell v. Crowell,* 966 F. Supp. 1071, 1079 (N.D. Ala. 1996) ("[T]his court is without authority to review TVA's decision to deny plaintiff's security clearance, to require defendant to allow plaintiff to remain in the position without a security clearance, or to alter the position so as not to require a security clearance.").[22]  TVA might accept plaintiff's test results if the NRC was required to make an exception to its regulatory requirements, but the court could not require that action unless the NRC was made a party to the case.  Additionally, even if money damages were the only

---

[21] Plaintiff has requested, among other items of relief, an injunction to prevent defendant from committing further violations.  *See* First Amended Complaint, at 5.

[22] Defendant asserts that Judge Blackburn's decision in *Mitchell v. Crowell* means that this court lacks subject matter jurisdiction over this case.  There is no indication that that was the intent, or the effect, of Judge Blackburn's decision.  The *Mitchell* case, like the present case, involved a claim for disability discrimination under the ADA.  Judge Blackburn did not hold that the court lacked subject matter jurisdiction over the plaintiff's claims.  To the contrary, she exercised jurisdiction over the claims and decided them on the merits.  Her comments about her inability to review TVA's decision to deny plaintiff's security clearance were made in the context of determining whether plaintiff's employer could provide a reasonable accommodation for her disability.  *See* *Mitchell,* 966 F. Supp. at 1079.

relief awarded, Day & Zimmermann likely would seek indemnification from TVA and/or the NRC, especially considering that TVA was the party who actually conducted the medical evaluation of plaintiff and issued the Form NRC-396. The absence of TVA and the NRC from the case would make it significantly more difficult for Day & Zimmermann to collect from those parties.

Furthermore, both TVA and the NRC have an interest in the subject matter of this action, and disposing of the case in their absence would impair or impede their ability to protect their respective interests. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). The NRC unquestionably has an interest in enforcing its own regulations — regulations drafted for the public health and safety of persons working in nuclear power plants, or living within the radius of fallout from a nuclear disaster, such as those that occurred at the Chernobyl Nuclear Power Plant in the Ukraine, or the Fukushima Daiichi nuclear power plant in Japan — and its ability to protect those hugely important national security interests could be impaired if does not join the litigation, because any injunction from this court requiring Day & Zimmermann to send plaintiff to work at the Browns Ferry Plant likely would result in a violation of NRC regulations. Indeed, a finding that an employer is not required to comply with NRC regulations if doing so might constitute a violation of a federal anti-employment-discrimination statute would essentially invalidate the regulations, or at least render

-14-

them ineffective. Such a finding should not be made without providing the NRC the opportunity to defend its regulations, especially considering that the regulations implicate important public health and safety issues. Additionally, TVA has an interest in its contract with Day & Zimmermann, and it is required to abide by NRC regulations. If this court were to require Day & Zimmermann to allow plaintiff to work at the Browns Ferry Plant, TVA likely would be in violation of NRC regulations, and its contract with Day & Zimmermann also might be in jeopardy. Finally, proceeding in the absence of either TVA or the NRC could subject Day & Zimmermann to the risk of incurring inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii). If Day & Zimmermann were required to send plaintiff to work at the Browns Ferry Plant, it might be in violation of both its TVA contract and federal regulations. Which obligation would it satisfy: its obligation to this court?; its contractual obligations?; or its obligation to comply with federal regulations? These same concerns are present even if no injunction were issued. Day & Zimmermann should not be placed in the position of having to choose whether to comply with its contractual and regulatory obligations, or to incur monetary damages under a federal anti-discrimination statute.

### 3.    Can TVA and the NRC be joined as parties?

Defendant asserts that TVA cannot be joined as a party to this action, because

plaintiff failed to exhaust his administrative remedies with regard to TVA.  *See*

*Tarmas v. Secretary of Navy,* 433 F. App'x 754, 759 (11th Cir. 2011) ("A plaintiff

asserting a private right of action under the Rehabilitation Act must satisfy the

exhaustion of administrative remedies requirement in the manner prescribed by Title

VII.").[23]  Defendant also asserts that the NRC cannot be joined because decisions of

the NRC generally are not judicially reviewable.  *See Arnow v. United States Nuclear*

*Regulatory Commission,* 868 F.2d 223, 234 (7th Cir. 1989) ("We believe it is

apparent that Congress has entrusted the NRC with wide, unreviewable discretion in

the area of agency enforcement.").  The court agrees with defendant that plaintiff

would be unable to assert a successful claim against TVA for disability discrimination

under the Rehabilitation Act, or a claim against the NRC for review of any

administrative decision.

### 4.    Should the case proceed without TVA and the NRC?

The court easily concludes that this case should not proceed in the absence of

TVA and the NRC.  For many of the same reasons discussed above, when addressing

---

[23] TVA is a government-owned corporation, created in 1933 pursuant to the TVA Act.  16 U.S.C. §§ 831-831dd.  As such, any disability discrimination claims against TVA would arise under the Rehabilitation Act, which prohibits federal agencies from discriminating against otherwise qualified individuals with a disability.  *See, e.g., Mullins v. Crowell,* 228 F.3d 1305, 1313 (11th Cir. 2000); *Sutton v. Lader,* 185 F.3d 1203, 1207 (11th Cir. 1999).  *See also* 42 U.S.C. § 12111(5)(B) (stating that the United States and its agencies are excluded from coverage under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.).

the questions of whether TVA and the NRC are "indispensable parties," a judgment rendered in the absence of either of those parties could result in prejudice to them, or to Day & Zimmermann.  A judgment requiring the employment of plaintiff at the Browns Ferry Plant might require Day & Zimmermann to put its contract with TVA at risk, might require TVA to choose between risking violation of court orders or violation of NRC regulations, and might require the NRC to risk the integrity of its regulations.  A monetary judgment would effectively punish Day & Zimmermann for complying with NRC regulations and its contract with TVA, and it could subject both TVA and the NRC to potential indemnification liability.  *See* Fed. R. Civ. P. 19(b)(1).  The court knows of no way in which such prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or any other measures.  *See* Fed. R. Civ. P. 19(b)(2).  Furthermore, a judgment rendered in the absence of TVA or the NRC might not even be adequate to redress plaintiff's alleged wrongs.  If this court ordered Day & Zimmermann to place plaintiff in employment at the Browns Ferry plant, TVA could refuse to accept him if it had not been made a party to this case and was not subject to this court's order.  Additionally, if Day & Zimmermann or TVA needed the NRC to make an exception to their regulatory requirements in order to employ plaintiff at the Browns Ferry Plant, the NRC would not be compelled

to do so unless it was a party to this case.[24]  *See* Fed. R. Civ. P. 19(b)(3).  Finally,

with regard to the last of the Rule 19(b) factors, the court is uncertain what other

remedies plaintiff might have available to him if the case were dismissed at this point

for nonjoinder.  *See* Fed. R. Civ. P. 19(b)(4).  However, it is clear that other remedies

*have been* available to plaintiff, even though he may or may not have taken advantage

of them.  For example, plaintiff could have sought administrative review within TVA

of the decision not to clear him medically for work at the Browns Ferry Plant.  The

record does not indicate that plaintiff ever made any attempt to do so.  Additionally,

the following federal regulation provides a review procedure for decisions by the

NRC to deny access to one of its covered facilities:

> Each licensee and applicant shall include a procedure for the
> notification of individuals who are denied unescorted access, unescorted
> access authorization, or who are unfavorably terminated.  Additionally,
> procedures must include provisions for the review, at the request of the
> affected individual, of a denial or unfavorable termination of unescorted
> access or unescorted access authorization that may adversely affect
> employment.  The procedure must contain a provision to ensure the
> individual is informed of the grounds for the denial or unfavorable
> termination and allow the individual an opportunity to provide
> additional relevant information and an opportunity for an objective

---

[24] This court has serious doubts about its ability to compel the NRC to make an exception to its health and safety requirements in order for one of its facilities to employ a particular individual (as well as doubts about the wisdom of any such decision).  *See Mitchell,* 966 F. Supp. at 1079.  The court also has doubts about whether plaintiff would ever be able to prevail on any claim on the merits against either TBA or the NRC.  Even so, the statements made in the text paragraph accompanying this footnote assume that a judgment *could* be entered in plaintiff's favor, and that injunctive relief *would* be available.

review of the information upon which the denial or unfavorable termination of unescorted access or unescorted access authorization was based. The procedure must provide for an impartial and independent internal management review. Licensees and applicants shall not grant unescorted access or certify unescorted access authorization, or permit the individual to maintain unescorted access or unescorted access authorization during the review process.

10 C.F.R. § 73.56(l). There also is no indication that plaintiff ever contacted the NRC directly with any complaints.

In summary, the balance of all of the factors enumerated in Federal Rule of Civil Procedure 19(b) weighs in favor of a determination that this case should not proceed in the absence of TVA and the NRC.

**B**.   **Motion for Leave to Amend**

As previously noted, plaintiff's proposed Second Amended Complaint does not address any of the deficiencies highlighted in defendant's motion to dismiss the First Amended Complaint. Specifically, it does not include any claims against TVA or the NRC, and it does not provide any additional grounds to overcome defendant's argument that those entities are necessary and indispensable parties under Federal Rule of Civil Procedure 19. Therefore, it would be futile to allow plaintiff to file the proposed Second Amended Complaint, and his motion for leave to amend will be denied.

## IV. CONCLUSION AND ORDERS

-19-

In accordance with the foregoing, plaintiff's motion for leave to file a Second Amended Complaint is DENIED.

Further, for all of the reasons discussed above, this court determines that TVA and the NRC are necessary and indispensable parties to this litigation under Federal Rule of Civil Procedure 19, but neither of those entities can be joined as parties. Defendant's motion to dismiss plaintiff's First Amended Complaint therefore is due to be, and it hereby is, GRANTED.  All claims asserted against defendant Day & Zimmerman are dismissed.  Costs are taxed to plaintiff.  The Clerk is directed to close this file.

DONE this 17th day of May, 2012.

_____

United States District Judge

-20-